# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

---

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

November 2, 2021

By ECF and Email

Judge Loretta A. Preska,
   United States District Judge,
      United States District Court for the Southern District of New York,
         Daniel Patrick Moynihan United States Courthouse,
           500 Pearl Street, Courtroom 12A,
              New York, New York 10007-1312.

        Re:   *Aurelius Capital Master, Ltd., et al.* v. *The Republic of Argentina*,
                No. 19-cv-351-LAP, 19-cv-11338-LAP, 19-cv-9786-LAP,
                19-cv-10109-LAP, 19-cv-10131-LAP  (S.D.N.Y.)

Dear Judge Preska:

        On behalf of the Republic of Argentina (the "Republic"), we request a discovery conference pursuant to the Court's Individual Practice 2.A and Local Civil Rule 37.2.  Plaintiffs are sophisticated hedge funds seeking hundreds of millions of dollars on the theory that the Republic acted in bad faith to deny them payment under GDP-linked Securities ("Securities") issued in 2005 and 2010 that have otherwise paid out nearly $10 billion.

        Regrettably, after Defendants made multiple efforts to resolve this dispute, Plaintiffs have taken the absolutist position that nothing in their files (apart from proof of their ownership of the Securities) is relevant or discoverable.  Plaintiffs are not claiming that the discovery the Republic seeks is burdensome.  Indeed, they have refused to even provide, in response to an interrogatory, any of the *names* of their employees who were responsible for buying the Securities.  This Court has rightly rejected efforts—like Plaintiffs'—to take "one-sided discovery."  *AIG Mexico Seguros Interamericana, S.A. de C.V.* v. *M/V Zapoteca*, 844 F. Supp. 2d 440, 461 (S.D.N.Y. 2012) (Preska, J.).

        The Republic respectfully asks the Court to order Plaintiffs to meet their basic discovery obligations by responding to Defendants' interrogatories (exemplars with responses attached as Ex. A) and document requests (exemplars with responses attached as Ex. B), including:

- Information and documents regarding Plaintiffs' acquisition of and interest in the Securities, including financing used to acquire the Securities and any subsequent attempts to assign them.  (*See* Ex. A, Interrog. 1; Ex. B, Request Nos. 2, 10, 27–29.)

Judge Loretta A. Preska                                                                                                -2-

- Documents and communications concerning Plaintiffs' reasons for acquiring the Securities.  (*See* Ex. A, Interrog. 1; Ex. B, Request Nos. 1–8, 31.)

- Documents and communications reflecting Plaintiffs' or third parties' analysis and understanding of the Securities' terms and the Republic's payment obligations.  (*See* Ex. A, Interrogs. 2–4; Ex. B, Request Nos. 1–9, 11–26, 30–31.)

This information is highly relevant to the claims and defenses at issue.  *See* Fed. R. Civ. P. 26(b)(1).  Except for incomplete account statements,[1] Plaintiffs have refused to produce anything beyond *publicly available documents* and certain pre-litigation communications with the Republic.  Plaintiffs have no justification for their refusal to participate in the discovery process.

    ***1.***    ***Plaintiffs' acquisition of and interest in the Securities.***  To establish the basic elements of their breach of contract claim, Plaintiffs must prove that a contract was formed, that Plaintiffs performed, that the Republic did not, that this alleged nonperformance caused Plaintiffs' injuries, and in what amount.  *Second Source Funding, LLC* v. *Yellowstone Cap., LLC*, 40 N.Y.S.3d 410, 411 (App. Div. 2016).  Defendants' discovery requests ask for information going to these basic elements, such as communications and documents relating to acquisition, sale, and ownership of the Securities.  (Ex. A, Interrog. 1; Ex. B, Request Nos. 2, 27, 29.)  Information about Plaintiffs' purported acquisition of and ownership interest in the Securities is also essential to assess Plaintiffs' standing and to determine whether Plaintiffs' claims are timely.  Indeed, one Plaintiff, WASO Holding Corporation, already *admits*, through an amendment to its complaint, to purchasing most of its Securities *after* filing suit and *after* the prescription or limitations period had expired.  *See Adona LLC et al.*, 19 Civ. 11338, ECF No. 23, at 2.

    ***2.***    ***Plaintiffs' reasons for acquiring the Securities***.  The Republic seeks basic information concerning Plaintiffs' financing of their purchases and ownership structure (Ex. A, Interrog. 1; Ex. B, Request Nos. 10, 27–29), which bear directly on the defense of champerty.

    New York law prohibits "buying or taking an assignment of a bond, promissory note, bill of exchange, book debt, or other thing in action, or any claim or demand, *with the intent and for the purpose of bringing an action or proceeding thereon*."  N.Y. Judiciary Law § 489 (emphasis added).  The Republic has pled this champerty defense and is entitled to discovery that will allow it to determine whether Plaintiffs' principal purpose for acquiring the Securities was to file these claims.  (Ex. A, Interrog. 1; Ex. B, Request Nos. 1–8, 31.)

    Courts in this District routinely order discovery of a plaintiff where the defense of champerty is at issue.  *See, e.g.*, *Tr. for Holders of Merrill Lynch Mortg. Certificates* v. *Love Funding*, 2005 WL 2582177, at *4 (S.D.N.Y. Oct. 11, 2005) ("The [plaintiff's] contention that it is entitled to judgment regarding the champerty defense as a matter of law appears to be premature, because [defendant] has not yet had an opportunity to conduct discovery on this issue."); *Elliott Assocs., L.P.* v. *Rep. of Peru*, 948 F. Supp. 1203, 1214 (S.D.N.Y. 1996) ("Defendants are entitled

---

[1] Plaintiffs have agreed to provide documents showing their ownership of the securities from the time they filed suit in 2019 or later to the present.

to discovery upon their allegations of champerty which may require a factual hearing upon a full record.").

3.    *Plaintiffs' understanding of the Securities' terms and the Republic's payment obligations*. The resolution of Plaintiffs' claim that the Republic breached the implied covenant of good faith and fair dealing is fact-specific. *See Tractebel Energy Mktg., Inc.* v. *AEP Power Mktg., Inc.*, 487 F.3d 89, 98 (2d Cir. 2007) ("a court must examine not only the express language of the parties' contract, but also any course of performance or course of dealing"). In particular, Plaintiffs claim that the Republic breached the implied covenant by "discontinuing publication of the Actual Real GDP in 1993 prices in a way that destroyed Plaintiffs' right to the fruits of the contract." Pls.' Opp'n to Republic's Motion to Dismiss, *Aurelius*, 19-cv-351-LAP, ECF No. 35, at 19. As holders of a substantial portion of the outstanding Securities, Plaintiffs' own expectations and projections as to how their compensation would be calculated—such as whether INDEC would or could continue to publish GDP statistics in 1993 prices indefinitely into the future—are relevant to evaluating whether the Republic's actions breached any term implied by the agreement. (Ex. A, Interrogs. 2–4; Ex. B, Request Nos. 1–9, 11–26, 30–31.)

The Republic has also raised the defense of mutual mistake, which directly raises the issue of Plaintiffs' understanding of the terms of Securities. *See ACA Galleries, Inc.* v. *Kinney*, 928 F. Supp. 2d 699, 701 (S.D.N.Y. 2013) (mutual mistake "is mutual, substantial, material and exists at the time the contract is entered"). No public source could substitute for actual insight into Plaintiffs' understanding of the terms of the Securities and the conditions under which payment would be made. *See Invs. Ins. Co. of Am.* v. *Dorinco Reinsurance Co.*, 917 F.2d 100, 105 (2d Cir. 1990) ("[P]arol evidence is admissible to establish the existence of the mutual mistake . . .").

The Republic seeks this discovery, among other things, to complement evidence already in its possession demonstrating that the parties—as well as other market players—understood the GDP growth rate trigger in the agreement to be a constant, healthy growth rate above 3 percent, rather than the variable (and improbably anemic) 1.263 percent factor that Plaintiffs urge results from their reading of the Securities. Indeed, Plaintiffs themselves have implicitly admitted the relevance of market participants' understanding of the Securities: on October 22, 2021, they served broad subpoenas on a dozen financial institutions that apparently follow the Securities, as well as Cleary Gottlieb, the law firm that represented the Republic in the issuance of the Securities, seeking "[a]ll documents and communications concerning the drafting of the Global Security or the issuance of the GDP Warrants." (Ex. C, at 11.)

Plaintiffs, for their part, have requested and received thousands of pages of documents from the Republic in response to their 56 requests and will get many more documents. The Republic respectfully requests that the Court hold a pre-motion discovery conference on these issues or grant leave to file a motion to compel Plaintiffs to respond fully to the Republic's discovery requests.

Respectfully,

*/s/ Robert J. Giuffra, Jr.*

Robert J. Giuffra, Jr.

cc:   Counsel of Record

> Counsel shall be prepared to address the issues raised in the Republic's letter at the conference set for November 9, 2021.

*Loretta A. Preska*  11/4/2021